**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ARBOR HILL CONCERNED CITIZENS
NEIGHBORHOOD ASSOCIATION; ALBANY
COUNTY BRANCH OF THE NATIONAL
ASSOCIATION FOR THE ADVANCEMENT OF
COLORED PEOPLE; AARON MAIR; MARYAM MAIR;
and MILDRED CHANG,

                              Plaintiffs,

          v.                                          No. 03-CV-502
                                                       (NAM/DRH)

COUNTY OF ALBANY and ALBANY COUNTY
BOARD OF ELECTIONS,

                              Defendants.

ALBANY COUNTY REPUBLICAN COMMITTEE and
REPUBLICAN CAUCUS OF THE ALBANY COUNTY
LEGISLATURE,

                              Intervenors.

_____

**APPEARANCES:**                          **OF COUNSEL:**

DerOHANNESIAN & DerOHANNESIAN             PAUL DerOHANNESIAN II, ESQ.
Attorney for Plaintiffs
39 North Pearl Street
1st Floor
Albany, New York 12207

LAWYERS' COMMITTEE FOR CIVIL              CARA J. FINEMAN, ESQ.
   RIGHTS UNDER LAW
Attorney for Plaintiffs
1401 New York Avenue, N.W.
Suite 400
Washington, D.C. 20005

GIBSON, DUNN & CRUTCHER LLP               MITCHELL A. KARLAN, ESQ.
Attorney for Plaintiffs                   MARK E. BINI, ESQ.
200 Park Avenue
New York, New York 10166-0193

MICHAEL C. LYNCH, ESQ.
Albany County Attorney
Attorney for Defendants

County Office Building
112 State Street
Room 900
Albany, New York 12207

TOM MARCELLE, ESQ.
Attorney for Intervenors
2 E-Com Square
Third Floor
Albany, New York 122207

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT AND RECOMMENDATION[1]

Presently pending are the motions of plaintiffs for attorneys' fees and costs totaling

$483,948.64[2] for proceedings in the above captioned case in the district court and on

appeal.  Docket Nos. 100, 119.  Defendants County of Albany and the Albany County Board

of Elections (collectively the "County") oppose both motions in part.  Docket Nos. 111, 126.

For the reasons which follow, it is recommended that plaintiffs be awarded attorneys' fees

and costs totaling $160,763.07.

### I. Background

The facts and procedural history of this case are described in detail in the six prior

decisions in this case.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of

---

[1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B).  Docket Entry dated 9/17/04; see Fed. R. Civ. P.
54(d)(2)(D) (authorizing the district court to refer a motion for attorney's fees to a
magistrate judge for report and recommendation subject to the de novo review provisions
of Fed. R. Civ. P. 72(b)).

[2]Plaintiffs' original motions sought a total of $501,228.64.  In reply papers, however,
plaintiffs reduced their claims by $19,730.00 in response to certain objections of
defendants.  Pls. Reply Mem. of Law (Docket No. 130) at 2 n.1.

Albany, 369 F.3d 91 (2d Cir. 2004) (Arbor Hill II); Arbor Hill Concerned Citizens

Neighborhood Ass'n v. County of Albany, 357 F.3d 260 (2d Cir. 2004) (Arbor Hill I); Arbor

Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 289 F. Supp. 2d 269

(N.D.N.Y. 2003) (Mordue, J.); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County

of Albany, 281 F. Supp. 2d 436 (N.D.N.Y. 2003) (Mordue, J.); Arbor Hill Concerned Citizens

Neighborhood Ass'n v. County of Albany, No. 03-CV-502 (NAM/DRH), 2003 WL 22139798

(N.D.N.Y. Sept. 17, 2003) (Homer, M.J.); Arbor Hill Concerned Citizens Neighborhood Ass'n

v. County of Albany, No. 03-CV-502 (NAM/DRH), 2003 WL 21524820 (N.D.N.Y. July 7,

2003) (Homer, M.J.).  Familiarity with these decisions is assumed.  The facts related herein

are those pertinent to plaintiffs' pending motions.

 In December 2002, the County enacted a redistricting plan in response to the 2000

Census which continued at  three the number of majority-minority districts in the County.

Plaintiffs, two community organizations and three individuals, contended that any

redistricting plan should contain at least four majority-minority districts and endeavored to

commence a lawsuit challenging the County's plan as violating the Voting Rights Act of

1965, 42 U.S.C. § 1971 et seq. ("VRA"). Plaintiff Aaron Mair ("Mair") was the Chair of

plaintiff Arbor Hill Concerned Citizens Neighborhood Association and acted as "lead

plaintiff."  Mair Decl. (Docket No.  105) at ¶ 1; Pls. Mem. of Law (Docket No. 100) at 3.

 Mair undertook to retain an attorney for the case.  Mair was initially unsuccessful in

retaining any law firm in Albany County, finding that attorneys either lacked experience in

VRA cases, lacked the resources to undertake such a case,  were precluded from accepting

the case by actual or perceived conflicts of interest, or were simply unwilling to accept the

case.  Mair Decl. at ¶¶ 5-11; Marcelle Decl. (Docket No. 130) at ¶¶ 7-9.  In January 2003,

Mair traveled to Washington, D.C. and met with Cara J. Fineman ("Fineman"), a Staff

Attorney for the Lawyers' Committee for Civil Rights Under Law ("LCCRUL").  Mair Decl. at

¶ 12.  In April 2003, the LCCRUL agreed to represent plaintiffs in this case.  Id. at ¶ 13.

In the same period, Mair retained Paul DerOhannesian II ("DerOhannesian") to

represent plaintiffs as local counsel.  Mair Decl. at ¶ 14.  DerOhannesian was then the sole

attorney in the Albany firm of DerOhannesian & DerOhannesian ("D&D").  Id.  Fineman and

DerOhannesian commenced this action on April 22, 2003.  Compl. (Docket No. 1).

However, DerOhannesian anticipated the need for litigation support that his solo practice

could not provide and federal civil appellate experience that he did not then possess.  Mair

Decl. at ¶ 14; DerOhannesian Supplemental Decl. (Docket No. 130) at ¶¶ 3-4.  Through

Fineman's efforts, Mitchell A. Karlan ("Karlan"), a partner in the New York City law firm of

Gibson, Dunn & Crutcher LLP ("GD&C"), was retained in May 2003 to fill these perceived

needs.  Mair Decl. at ¶¶ 15-16.

These three law firms have represented plaintiffs throughout the proceedings in the

district court and the two appeals as joint counsel-of-record for all five plaintiffs.  The

litigation now having concluded, plaintiffs now seek an award of attorneys' fees and costs

for all three law firms as follows:

### District Court Proceedings

| Law Firm | Personnel | Total Fees | Total Costs |
|----------|-----------|------------|-------------|
| D&D | DerOhannesian and one associate | $74,018.75 | $1,132.52 |
| GD&C | Karlan, three associates, and one paralegal | $236,761.25 | $17,733.64 |
| LCCRUL | Fineman | $27,225.00 | $6,263.26 |
| **TOTAL** | | $338,005.00 | $25,129.42 |

**Appeal**

| Law Firm | Personnel | Total Fees | Total Costs |
|----------|-----------|------------|-------------|
| D&D | DerOhannesian and one associate | $9,143.75 | $2,763.43 |
| GD&C | Karlan, four associates, and one paralegal | $96,726.00 | $10,606.04 |
| LCCRUL | Fineman | <u>$1,575.00</u> | <u>$0.00</u> |
| **TOTAL** | | $107,444.75 | $13,369.47 |

## II. Discussion

Under the VRA, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1973l(e).  The standards applicable to awards under 42 U.S.C. § 1988 govern the determination of such awards under the VRA.  Arbor Hill II, 369 F.3d at 94.  To be eligible for an award of attorneys' fees and costs, a plaintiff must prevail on "any significant claim affording it some of the relief sought."  Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791 (1989).  Here, the County does "not dispute plaintiffs' status as a 'prevailing party' for purposes of this application" as to plaintiffs' motion regarding the district court proceedings. Pls. Mem. of Law (Docket No. 126) at 1.  As to plaintiffs' motion regarding proceedings on appeal, the Second Circuit has already held that plaintiffs were the prevailing parties on their appeal in Arbor Hill I.  Arbor Hill II, 369 F.3d at 94-95.  Accordingly, the only issue presented by these motions are the amounts of attorneys' fees and costs to be awarded to plaintiffs on their motions.

### A. Attorneys' Fees

To determine the amount of attorneys' fees, a court must first multiply the number of

hours expended by a plaintiff's attorney in prosecuting a case by an hourly rate for the attorney's services to establish a "lodestar" figure. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Certain adjustments may then be made to this lodestar figure to arrive at a final award. Tanzini v. Marine Midland Bank, 978 F. Supp. 70, 83-84 (N.D.N.Y.1997) (McAvoy, J.).

## 1. Hourly Rate

The reasonable hourly rates are determined by reference to the marketplace. See Missouri v. Jenkins, 491 U.S. 274, 285 (1989). This requires a court to determine "'the normal rate in the legal community for substantially similar work by competent practitioners.'" Amato v. City of Saratoga Springs, 991 F. Supp. 62, 66 (N.D.N.Y.1998) (McAvoy, J.) (quoting Fiacco v. Rensselaer, 663 F. Supp. 743, 745 (N.D.N.Y.1987)). "The district court may also consider other rates that have been awarded in similar cases in the same district." Id. Plaintiffs have filed separate motions for fees for the trial and appeal. However, the determination of the hourly rates requires the same analysis for trial and for appeal. see Arbor Hill II, 369 F.3d at 96. Accordingly, the hourly rates recommended herein apply to both plaintiffs' motions.

Here, plaintiffs seek an award based on the following average hourly rates for attorneys and paralegals:

| **Attorneys** | **Average Hourly Rates** |
| --- | --- |
| D&D | |
|   - DerOhannesian | $275 |
|   - One associate | $125[3] |
| | |
| GD&C | |
|   - Karlan | $703.71-$725.68 |
|   - Four associates | $297.40-$460.68 |
|   - One paralegal | $228.07-$233.90[4] |
| | |
| LCCRUL | |
|   - Fineman | $175 |
|   - Law clerk | $100[5] |

### a. Forum District

Plaintiffs seek an award of fees for D&D and LCCRUL at rates prevailing in the Northern District but seek an award for fees for GD&C at Southern District rates.  The County challenges this contention and the Second Circuit has remanded plaintiffs' motion for appellate fees, inter alia, for a resolution of this issue.  See Arbor Hill II, 369 F.3d at 96-97.  As a threshold matter, then, a determination must be made as to the appropriate forum marketplace by which to determine the appropriate hourly rates for GD&C.[6]

---

[3]DerOhannesian Decl. (Docket No. 104) at ¶¶ 10-11; DerOhannesian Decl (Docket No. 119) at ¶¶ 24-25.

[4]Karlan Decl. (Docket No. 101) at ¶¶ 18-23; Karlan Decl. (Docket No. 119) at ¶¶ 34-38.

[5]Fineman Decl. (Docket No. 103) at ¶ 8; Fineman Decl. (Docket No. 119) at ¶ 7.

[6]The choice of forum district is a significant factor on these motions.  For example, as discussed immediately below in subsection (b), the maximum hourly rate allowable for Karlan would be $210 rather than the $703.71-$725.68 sought here.  If rates that have been awarded in similar cases in the Southern District are considered, the maximum rate allowable for Karlan could be $350-$400.  See, e.g., Patrolmen's Benevolent Ass'n of City of New York v. City of New York, No. 97 Civ. 7895, 2003 WL 21782675, at *3 (S.D.N.Y. July 31, 2003) ($350); M.L. v. Board of Educ. of City of New York, No. 02 Civ. 4288 (SHS), 2003 WL 1057476, at *2 (S.D.N.Y. Mar. 10, 2003) ($375); S.W. ex rel. N.W. v. Board of Educ. of the City of New York, 257 F. Supp. 2d 600, 604-05 (S.D.N.Y. 2003) ($350);

The Second Circuit has held in this case that

> the relevant community for calculation of the lodestar with respect to an attorney's services in the district court is normally the forum district.  "We and other circuits have strayed from this rule only in the rare case where the 'special expertise' of non-local counsel was essential to the case, [or] it was clearly shown that local counsel was unwilling to take the case, or other special circumstances existed."

Arbor Hill II, 369 F.3d at 96 (quoting In re "Agent Orange" Prod. Liability Litig., 818 F.2d 226, 232 (2d Cir.1987) and Polk, 722 F.2d at 25).  The Second Circuit determined that regarding plaintiffs' motion for fees incurred on appeal, this case fell neither within the exception for special expertise nor that for local counsel unwilling to take the case.  Id. at 96-97.  As to the "other special circumstances" exception, the Second Circuit remanded plaintiffs' motion, inter alia, for the district court to determine whether this exception applied.  Id. at 97 ("Only if the district court finds that there are exceptional circumstances that would justify deviating from the general rule and selecting Manhattan as the relevant community for determining the reasonable hourly rates for GD & C's representation of plaintiffs in the district court should Manhattan rates be used for calculating the lodestar with respect to GD & C's fee for this appeal.").  Plaintiffs bear the burden of demonstrating that special or extraordinary circumstances existed justifying application of Southern District rates and, as GD&C represented plaintiffs in both the district court and on appeal, the determination of this issue governs plaintiffs' motions for fees in both proceedings.  Id.

Here, plaintiffs contend that special circumstances meriting Southern District rates

---

Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc., No. 00 CIV. 5207(JCF), 2002 WL 1059117, at *13 (S.D.N.Y. May 28, 2002 ($345).  It appears that the approximately two-to-one proportionality of th the disparity between the Southern and Northern Districts appears to have been maintained for at least the last twenty-five years.  See, e.g., Polk, v. New York State Dep't of Correctional Servs, 722 F.2d 23, 24-25 (2d Cir. 1983) (remanding claim for attorney's fees in a civil rights case to the district court for reconsideration whether the Northern District hourly rate of $75 or the Southern District hourly rate of $150 should apply).

existed because DerOhannesian, their local counsel, "was both unwilling and unable due to the size of his office to take the case on by himself, and because no other local counsel was willing to work on the case." Pls. Reply Mem. of Law (Docket No. 130) at 3; see also Pls. Mem. of Law (Docket No. 100) at 6-7; Pls. Mem. of Law (Docket No. 119) at 14-15. The prosecution of this case in the district court with a reasonable degree of competence unquestionably required resources beyond those available to a solo practitioner such as DerOhannesian. The volume of materials required to be amassed, analyzed, and presented, the need to locate and work with expert witnesses in a narrow, particularized specialty, and the involvement of plaintiffs and the large number of individuals associated with the two plaintiff-organizations, among other things, support DerOhannesian's assertion that he required the assistance of a law firm larger than D&D. See, e.g., DerOhannesian Decl. (Docket No. 119) at ¶ 6. Moreover, DerOhannesian lacked federal civil appellate experience and, correctly anticipating the likelihood of appellate litigation in this case, sought additional counsel with such experience. Id. Both rationales for retaining additional counsel to work with DerOhannesian were reasonable.

There is no dispute that Karlan and GD&C met these criteria. Karlan had substantial federal civil appellate experience, see Karlan curriculum vitae (Docket No. 100, Ex. E), and GD&C could provide the larger firm resources which were required. The County challenges, however, plaintiffs' contention that they were unable to retain a law firm in the Northern District which met these criteria. Plaintiffs demonstrate that they exercised reasonable diligence in attempting to retain a law firm in Albany County which could support the litigation of this case and provide the necessary appellate experience because of unwillingness to accept the case or conflicts of interest. See Mair Decl. (Docket No. 105) at ¶¶ 6-11; Marcelle Decl. (Docket No. 130) at ¶¶ 7-9.

Without more, however, the unavailability of a law firm in Albany County with the requisite appellate experience does not establish the special circumstances necessary for the application of Southern District rates.  Although plaintiffs have shown that no Albany County law firm could be retained, they have made no showing as to any of the other thirty-one counties in the Northern District.  The counties immediately surrounding Albany County include several law firms of sufficient size and federal civil appellate experience to support the litigation of this case.  Moreover, law firms in Syracuse, Utica, Binghamton, and Kingston also include such law firms, and none are located at any greater distance from Albany County than was GD&C.  Plaintiffs have made no showing that before retaining a law firm outside the Northern District, they made any effort to retain a Northern District firm. As the Second Circuit noted,

> [p]laintiffs have not shown either that the case required special expertise beyond the competence of Northern District law firms or that all Northern District law firms having such expertise were unable or unwilling to take the case.  Given the absence of such evidence, we expect that the district court would view the Northern District as the relevant legal community for purposes of calculating a reasonable attorney's fee for services rendered in this case in the district court.  If the Northern District would be the relevant community with respect to the calculation of a reasonable attorney's fee for representation in the district court, the Northern District is the relevant community with respect to the reasonableness of fees for this appeal.

Arbor Hill II, 369 F.3d at 96-97.

Thus, plaintiffs have failed to demonstrate that special circumstances existed meriting the application of Southern District rates to the work performed by GD&C. Accordingly, Northern District rates should be applied to the work performed by GD&C as well as that performed by D&D and LCCRUL, both in the district court and on appeal.

10

## b. Hourly Rates

All plaintiffs' counsel seek an award based on the hourly rates they normally charge. The County contend that these rates all exceed the hourly rates of attorneys of similar experience and competence in the Northern District.

The hourly rate portion of the lodestar should represent the rates prevailing in the Northern District "for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.1 (1984). Courts in this district have consistently held in civil rights cases for the period at issue here that the prevailing hourly rates were $175 for the most experienced attorneys, $125 for associates with four or more years experience, $100 for associates with less than four years experience, and $65 for paralegals. See, e.g., DiSorbo v. City of Schenectady, No. 99-CV-1131, 2004 WL 115009, at *2 (N.D.N.Y. Jan. 9, 2004) (Kahn, J.); Patterson v. Julian, 250 F. Supp. 2d 36, 45 (N.D.N.Y. 2003) (Hurd, J.), aff'd in part and rev'd in part on other grounds, 370 F.3d 322 (2d Cir. 2004); Gatti v. Community Action Agency of Greene County, Inc., 263 F. Supp. 2d 496, 515 (N.D.N.Y. 2003) (Treece, M.J.), aff'd, 86 Fed.Appx. 478 (2d Cir. Feb. 9, 2004); Carroll v. DeBuono, 48 F. Supp. 2d 191, 193 (N.D.N.Y. 1999) (McAvoy, J.); see also New York State Teamsters Conference v. United Parcel Serv., No. 98-CV-1902 (FJS/GLS), 2004 WL 437474, at *7 (N.D.N.Y. Feb. 27, 2004) (Scullin, C.J.), aff'd, 382 F.3d 272 (2d Cir. 2004) (ERISA).

Plaintiffs acknowledge the prevailing rate structure in the Northern District but contend that it does not reflect the rates prevailing during the period in question. For example, plaintiffs contend with respect to the GD&C rates that the Court should consider the fact that an Albany-area religious organization recently paid an hourly rate of $770 to a partner in a New York City firm and a total fee exceeding $2.2 million for an investigation

and report on allegations of clergy misconduct.  See Karlan Decl. (Docket No. 119) at ¶ 42 & Ex. CC.  Plaintiffs also assert that their attorneys regularly charged higher rates and that other attorneys in the Northern District in similar such cases did as well.  These contentions, however, run counter to the rate structure found to prevail in this period in similar such cases by virtually every judge in the district.

Plaintiffs further contend, however, that the Northern District rate structure should be increased.  The present structure was established in March 1999 and increased a rate structure that had been in effect since 1988.  See TM Park Ave. Assocs. v. Pataki, 44 F. Supp. 2d 158, 166-67 (N.D.N.Y. 1999) (McAvoy, C.J.), vacated on other grounds, 214 F.3d 344 (2d Cir. 2000).  Six years have now passed since that structure was found to prevail in the Northern District and the passage of that period of time and the effects of inflation are causes for reconsideration of the rate structure.

It also appears that the rate structures in neighboring districts are now significantly higher than those in the Northern District.  For example, the prevailing maximum hourly rate in fee-shifting cases in the District of Connecticut for attorneys with significant experience appears to be $275-$300.  See Tsombanidis v. City of West Haven, 208 F. Supp. 2d 263, 276 (D. Conn. 2002) ($275); Silverburg v. People's Bank, No. 90CV060AVC, 2000 WL 502621, at *1 (D. Conn. May 17, 2000) ($300).  In the Western District of New York, that maximum appears to be $225-240.  See Sabatini v. Corning-Painted Post Area Sch. Dist., 190 F. Supp. 2d 509, 516 (W.D.N.Y. 2001) ($225); McPhatter v. Cribb, No. 97-CV-0360E(F), 2000 WL 743972, at *3 (W.D.N.Y. May 25, 2000) ($240).  In the District of Vermont, hourly rates as high as $225 have been awarded.  See United States ex rel. Poulton v. Anesthesia Assocs. of Burlington, Inc., 87 F. Supp. 2d 351, 356  (D. Vt. 2000) ($225); see also Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999) ($210).

Therefore, given the passage of time since the present rate structure was found to be the prevailing rates, the information contained in plaintiffs' supporting affidavits, the prevailing rates in neighboring districts, and the Court's familiarity with the rates charged in the Northern District, the rate structure previously found to prevail in the Northern District is no longer appropriate.  Rather, what appears appropriate here are maximum hourly rates of $210 for experienced attorneys, $150 for associates with more than four years experience, $120 for associates with less than four years experience, $80 for paralegals, and one-half of these rates for time expended for travel.  This rate structure represents an increase of approximately 20% over that previously found and reasonably represents the maximum rate structure existing in this district at the time plaintiffs' attorneys' fees were incurred.

Applying these rates here for the proceedings in both the district court and on appeal, DerOhannesian and Karlan are both entitled to the maximum hourly rate given their years of experience and demonstrated professional abilities.  The other attorneys are entitled to lesser amounts as indicated below and for the reasons there stated:

| Attorneys | Average Hourly Rates |
|---|---|
| D&D | |
|    - DerOhannesian | $210 |
|    - One associate/paralegal | $120/$80[7] |
| GD&C | |
|    - Karlan | $210 |
|    - Four associates | $150/$120[8] |
|    - One paralegal | $80 |
| LCCRUL | |
|    - Fineman | $120[9] |
|    - Law clerk | $80[10] |

## 2. Hours Expended

Plaintiffs must support their motions here with contemporaneous time records of the work performed.  See Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); Carroll, 48 F. Supp. 2d at 194.  Any hours deemed "'excessive, redundant, or otherwise unnecessary . . .'

---

[7]D&D's associate graduated from law school in May 2003 and was not admitted to practice in this Court until May 21, 2004.  Zegarelli curriculum vitae (Docket No. 100, Ex. D and Docket No. 119, Ex. E to DerOhannesian Decl.).  Thus, until admitted, the associate was entitled to compensation at the paralegal rate.  After her admission, she was entitled to compensation at the rate of a newly admitted attorney.

[8]One associate had more than four years experience at all times during the periods in question and, therefore, should be awarded the hourly rate of $150.  See Arroyo curriculum vitae (Docket No. 100, Ex. F).  The other three associates all had less than four years experience at all times during the periods in question and, therefore, should be awarded the hourly rate of $120.  See Bini curriculum vitae (Docket No. 100, Ex. H and Docket No. 119, Ex. X); Ducao curriculum vitae (Docket No. 100, Ex. H and Docket No. 119, Ex. Y); Gooding curriculum vitae (Docket No. 100, Ex. I and Docket No. 119, Ex. Z).

[9]Fineman graduated from law school in May 2001 and, therefore, had less than four years experience throughout the periods in question here.  See Fineman curriculum vitae (Docket No. 119, Ex. A to Fineman Decl.).

[10]There is no showing that the law clerk had graduated from law school or been admitted as an attorney.  Therefore, plaintiffs are entitled to compensation for the law clerk's time as for that of a paralegal.

14

should [be] exclude[d] . . . in calculation of the lodestar." Gierlinger v. Gleason, 160 F.3d

858, 876 (2d Cir. 1998) (quoting Hensley, 461 U.S. at 434).  A court must

> examine the hours expended by counsel and the value of the work
> product of the particular expenditures to the client's case.   Efforts put
> into research, briefing and the preparation of a case can expand to fill
> the time available, and some judgment must be made in the awarding
> of fees as to diminishing returns from such further efforts. . . .   In
> making this examination, the district court does not play the role of an
> uninformed arbiter but may look to its own familiarity with the case and
> its experience generally as well as to the evidentiary submissions and
> arguments of the parties.

DiFilippo v. Morizio, 759 F.2d 231, 235-36 (2d Cir. 1985); see also Gierlinger, 160 F.3d at

875.

   Here, plaintiffs seek attorneys' fees for the following total claimed hours:

### District Court Proceedings

| Law Firm | Personnel | Total Hours |
|---|---|---|
| D&D | DerOhannesian | 275.75 |
|  | One associate/paralegal | 51.50[11] |
| GD&C | Karlan | 110.25 |
|  | Three associates | 478.6 |
|  | Paralegal | 11.4[12] |
| LCCRUL | Fineman | 148.25 |
|  | Law clerk | 16.5[13] |

### Appeal

| Law Firm | Personnel | Total Hours |
|---|---|---|
| D&D | DerOhannesian | 27.0 |
|  | One associate/paralegal | 13.75[14] |

---

[11]DerOhannesian Decl. (Docket No. 119) at ¶ 30.

[12]Karlan Decl. (Docket No. 119) at ¶ 60.

[13]Fineman Decl. (Docket No. 119), Ex. B at 6.

[14]DerOhannesian Decl. (Docket No. 104) at ¶ 15.

| GD&C | Karlan | ` | 33.25 |
|------|--------|---|-------|
|      | Four associates | | 166.6 |
|      | Paralegal | | 34.2[15] |
| LCCRUL | Fineman | | 9.0[16] |

The County challenges a number of the hours claimed by plaintiffs both in the district court and on appeal as excessive, redundant, or otherwise unnecessary.

### a. Number of Attorneys

First, the County contends that plaintiffs utilized excessive numbers of attorneys at different stages to prosecute the trial and appeal.  For example, plaintiffs originally sought an award for the attendance of five attorneys at the oral argument of the appeal.  The Second Circuit noted that "[n]o doubt this was a consequence of plaintiffs' representation by three law offices, but the total number of attorneys in attendance was excessive, especially when the source of payment is to be the public fisc.  Only the hours reasonably necessary for attorney attendance at oral argument should be included in the firms' respective lodestars."  Arbor Hill II, 369 F.3d at 97.  In response, plaintiffs have reduced the amounts claimed for the attendance of counsel at that oral argument.  See Karlan Decl. (Docket No. 101) at ¶ 36 & n.2; DerOhannesian Decl. (Docket No. 104) at ¶ 15 & n.1.  However, no other claimed amount has been reduced by plaintiffs for using an excessive number of attorneys.

### i. Proceedings in the District Court

Like the oral argument on appeal, plaintiffs also regularly used an excessive number of attorneys for proceedings in the district court.  For example, plaintiffs regularly had three

---

[15]Karlan Decl. (Docket No. 101) at ¶ 36.

[16]Fineman Decl. (Docket No. 103) at ¶ 17.

or more attorneys present for telephone conferences which were invariably followed by telephone conference calls among all plaintiffs' counsel.  See, e.g., Defs. Mem. of Law (Docket No. 126) at Attach. 1. At a hearing on June 25, 2003 on plaintiffs' motion for a preliminary injunction, four attorneys were present although only DerOhannesian participated. Id. at 7-8.  At a three-day evidentiary hearing held September 8-10, 2003, six attorneys attended for plaintiffs. Id. at Attach. 2.  Discovery and other proceedings were similarly attended by multiple attorneys for plaintiffs. See id. at 9-13.[17]

Given the complexity of the factual and legal issues confronting plaintiffs in this case and the relative expedition of the proceedings, it was not unreasonable for plaintiffs to utilize more than one attorney to prepare and present their case.  It was not reasonable, however, for plaintiffs to utilize the services of eight attorneys and two paralegals or to expend the total number of hours claimed here.  In the circumstances of this case and based on this Court's observations of the district court proceedings, it appears reasonable that plaintiffs would utilize the services of the three principal attorneys from the three law offices as well as the assistance of one associate.  The utilization of the other attorneys and paralegals was excessive, redundant, and unnecessary.  Moreover, the hours claimed by the three principal attorneys and the associate adequately represent the total number of hours which plaintiffs' counsel reasonably expended representing plaintiffs in the district court.

DerOhannesian functioned as the lead attorney in the district court proceedings.  He advocated plaintiffs' positions almost exclusively in court proceedings and jointly with Karlan in conferences.  The hours claimed by DerOhannesian appear reasonable and are generally unchallenged by the County.  Fineman functioned as a resource to plaintiffs' other counsel

---

[17]While not dispositive of the reasonable number of attorneys required here, it is noteworthy that the County was generally represented at all stages and proceedings by one attorney, who was joined occasionally by a second attorney functioning in the role of a law firm associate.

on issues related to the VRA, an area of law in which plaintiffs' other counsel had no experience. The hours claimed by Fineman for performing this function appear reasonable. Karlan, an experienced civil rights attorney and appellate advocate, assisted DerOhannesian at all significant court proceedings and conferences and the hours claimed by him for this function also appear reasonable.

Given the functions performed by these three attorneys, however, the additional utilization of more than one associate in the district court proceedings was unnecessary and unreasonable. DerOhannesian, Fineman, and Karlan were able to provide each other with the support necessary for all proceedings and the hours claimed by them here are reasonably consistent with their functions. An associate was reasonably necessary to perform research, prepare evidence for hearings, and generally to support plaintiffs' litigation efforts. Given the assistance of an associate for these purposes, however, the additional assistance of any paralegal or law clerk was unnecessary and unreasonable. The associate who appears to have been most involved in the district court proceedings was GD&C associate Mark Bini ("Bini"). See Karlan Decl. (Docket No. 119) at ¶ 60. The hours claimed for Bini are not unreasonable, are not specifically challenged by the County, and should be allowed. The hours claimed for the other associates, paralegals, and law clerk were unreasonably and unnecessarily expended and should not be awarded.

Thus, for the district court proceedings, the hours claimed by DerOhannesian, Fineman, Karlan, and Bini were reasonably and necessarily expended and should be awarded. The hours claimed by the other associates, paralegals, and law clerk were not reasonably or necessarily expended and should not be awarded.

18

**ii. Proceedings on Appeal**

By comparison to the district court proceedings, the proceedings on appeal in <u>Arbor Hill I</u> were more focused and significantly less complex.  The appeal concerned a single, non-complex issue.  Plaintiffs' opening brief was eighteen pages in length and contained only six pages of legal argument.  Pls. Mem. of Law (Docket No. 100) at Ex. L.  Plaintiffs' reply brief was thirteen pages.  <u>Id.</u> at Ex. M.  As the Second Circuit stated,

> In addition, we question whether preparation of this appeal reasonably required the expenditure of some 300 attorney hours.  Plaintiffs' counsel just having litigated the matter intensively in the district court for a period of six months, it is difficult to believe that a large amount of time was needed to prepare the brief's description of the facts and procedural history;  and the entire argument section of the brief on this single-issue appeal occupied barely six pages.  Unless plaintiffs can persuade the district court that all of the time charges for preparation and briefing of the appeal were reasonably necessary, the number-of-hours component of the lodestar should be further reduced.

<u>Arbor Hill II</u>, 369 F.3d at 97.

Plaintiffs seek an award for a total of 283.8 hours expended by eight attorneys and one paralegal.  <u>See</u> Karlan Decl. (Docket No. 101) at ¶ 36 (234.05 hours); Fineman Decl. (Docket No. 103) at ¶ 17 (nine hours); DerOhannesian Decl. (Docket No. 104) at ¶ 15 (40.75 hours).  On the appeal, it appears that Karlan acted as lead counsel.  The hours he claims were reasonable and should be awarded.  Similarly, as lead counsel in the district court, DerOhannesian's assistance on the appeal was essential, the hours he claims were also reasonable, and those hours should also be awarded.  As to Fineman, given the narrow issue raised, it appears that her involvement was neither necessary nor reasonable.  The nine hours she claims should, therefore, not be awarded.

As to the associates and paralegal, it was reasonable and necessary for an associate to draft the briefs and to assemble the record on appeal.  Given the single narrow, non-complex issue, it was unnecessary for more than one associate to assist Karlan and

DerOhannesian in the preparation and argument of the appeal.  It appears that on appeal, as in the district court proceedings, Bini expended the most time of the associates.  See Karlan Decl. (Docket No. 101) at ¶ 36.  The hours claimed for Bini appear appropriate and reasonable for the time of an associate required to prosecute this appeal in support of Karlan and DerOhannesian.  The hours claimed for Bini should be allowed.  However, the additional hours claimed for the other four associates and a paralegal were unnecessary and unreasonable.  Those hours should not be awarded.

### b. Discovery

The County next contends that 12.25 hours expended for discovery in the period from June 15 through July 7, 2004 should not be allowed as the parties were then engaged in serious settlement discussions.  Defs. Mem. of Law (Docket No. 126) at 11-12.  While settlement discussions were then ongoing, however, no settlement had then been finalized.  Thus, the case was pending trial and plaintiffs were entitled, and were well-advised, to proceed with discovery and trial preparation unless and until a settlement was reached.  Thus, the hours expended by plaintiffs' counsel in this period were reasonable, necessary, and should be awarded.

### c. Pre-Hearing Brief

Plaintiffs prepared a two-page brief between August 26 and September 5, 2003 for the evidentiary hearing held the next week.  The brief was served on the County but was never filed.  The County contends that the brief was unnecessary.  Defs. Mem. of Law (Docket No. 126) at 12-13 & Attach. 4.  However, even if only served on the County and never filed, this brief was reasonably related to an issue at the hearing and was not,

therefore, unreasonable.  An award for hours expended in the preparation of this brief should not be deducted on this ground.

### d. Objections to Report-Recommendation

Next, the County objects to 46.15 hours expended by plaintiffs' counsel in preparing plaintiffs' objections to a report-recommendation of the undersigned.  Defs. Mem. of Law (Docket No. 126) at 13 & Attach. 5.  The County contends that the objections were "replete with misstatements and distortions of the record."  Id. at 13.  However, plaintiffs were entitled to present the record as they contended it existed and the district court made no finding which would provide cause to deny an award for the hours claimed for this endeavor. Accordingly, plaintiffs' claimed hours should not be reduced on this ground.

### e. Vague Time Records

The County next contends that the hours claimed by plaintiffs' counsel should be reduced because certain entries in time records for the GD&C attorneys are too vague to permit meaningful review.  Defs. Mem. of Law (Docket No. 126) at 15-16 & Attach. 6.  First, however, the instances cited by the County, while terse, are sufficient to determine the nature of the work performed.  Second, a reduction to the hours claimed by GD&C is already recommended herein by disallowing the hours for certain associates.  See subsection (a) supra.  Because that reduction is based on an assessment of the total hours reasonably expended by GD&C, it would duplicate that reduction additionally to reduce those hours because of specific defects in the time records.  Accordingly, the hours claimed by GD&C should not be further reduced on this ground.

21

### 3. Calculation of the Lodestar

As described above, then, the lodestar calculation yields the following totals:

#### District Court Proceedings

| Law Firm | Personnel | Rate | Hours[18] | Total |
|----------|-----------|------|-----------|-------|
| D&D | DerOhannesian | $210 | 245.75 | $51,607.50 |
| GD&C | Karlan | $210 | 85.25 | $17,902.50 |
| | Bini | $120 | 229.95 | $27,594.00 |
| LCCRUL | Fineman | $120 | <u>134.25</u> | <u>$16,110.00</u> |
| **TOTAL** | | | 695.20 | $113,214.00 |

#### Appeal

| Law Firm | Personnel | Rate | Hours | Total |
|----------|-----------|------|-------|-------|
| D&D | DerOhannesian | $210 | 22.5 | $4,725.00 |
| GD&C | Karlan | $210 | 33.25 | $6,982.50 |
| | Bini | $120 | <u>71.5</u> | <u>$8,580.00</u> |
| **TOTAL** | | | 127.25 | $20,287.50 |

### 4. Adjustments

There exists "a 'strong presumption' that the lodestar represents the 'reasonable' fee." City of Burlington v. Dague, 505 U.S. 557, 561 (1992) (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)).  Adjustments may be made to the lodestar figure for various reasons, but the party seeking such an adjustment bears the burden of establishing its reasonableness.  See id. (citing Blum, 465 U.S. at 898).

---

[18]The hours set forth herein include one-half the hours claimed by plaintiffs in their original motion papers for time expended for travel.  See Defs. Mem. of Law (Docket No. 111) at 10; Defs. Mem. of Law (Docket No. 126) at 14-15.

The County contends that the Court should apply an across-the-board reduction to the lodestar of up to 50% for a variety of reasons.  See Defs. Mem. of Law (Docket No. 111) at 11-12; Defs. Mem. of Law (Docket No. 126) at 19-20.  However, given the reduced hourly rates and hours expended recommended above, any further reduction of the lodestar in the context of this case would be unreasonable and unfair to plaintiffs.  Accordingly, the County's request for an across-the-board reduction should be denied.

Plaintiffs contend that the lodestar should be increased to reflect the extraordinary success achieved by their counsel both in the district court and on appeal.  There is no question of plaintiffs' success in both proceedings or of the abilities demonstrated by their counsel.  However, it is already recommended herein that plaintiffs' two principal counsel, DerOhannesian and Karlan, be compensated for virtually all hours claimed and at an hourly rate increased by 20% over the highest rate previously awarded in this district.  In addition, it is recommended herein that the time for two other plaintiffs' attorneys also be awarded for virtually all hours claimed for them.  In these circumstances, the lodestar recommended above constitutes a reasonable compensation to plaintiffs for the litigation of this case in the district court and on appeal.  No further adjustment should be made to the lodestar and plaintiffs' request for an upward adjustment should be denied.  The lodestar amounts set forth in subparagraph (3) supra should be awarded.

## B. Costs

Plaintiffs also move for an order awarding them costs totaling $38,498.89 incurred in the litigation of this case in the district court and on appeal.  See Pls. Mem. of Law (Docket No. 100) at 6 & n.5 ($13,369.47 on the appeal); Pls. Mem. of Law (Docket No. 119) at 13 & n.5 ($25,129.42 in the district court).  As prevailing parties, plaintiffs are entitled to recover

taxable costs pursuant to 28 U.S.C. § 1920 and "all reasonable out-of-pocket expenses that are normally charged to clients."  O'Grady v. Mohawk Finishing Prods., Inc., No. 96-CV-1945, 1999 WL 30988, at *7 (N.D.N.Y. Jan. 15, 1999) (Scullin, J.); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998); Hogan v. General Elec. Co., 144 F. Supp. 2d 138, 143 (N.D.N.Y.2001) (Hurd, J.).  Ordinary overhead expenses are not recoverable.  LeBlanc-Sternberg, 143 F.3d at 763.  Whether a particular item constitutes ordinary overhead or an awardable cost depends on whether the item is one normally absorbed within the attorney's fee or separately charged to a client.  See id.  The County challenges various costs claimed by plaintiffs.


### 1. Lodging, Meals, and Travel

The County contends that costs incurred for lodging and meals for attendance of GD&C counsel at the September 8-10, 2003 hearing is excessive.  As determined above, it was reasonable for Karlan and Bini to attend that hearing in addition to DerOhannesian and Fineman.  Therefore, charges for any additional GD&C counsel for that hearing were unreasonable and excessive.  It appears from the GD&C billing records that the claim for lodging and meals for that hearing included four individuals, not two.  See Karlan Decl. (Docket No. 119), Ex. V at 29 [hereinafter Ex. V].  Plaintiffs claimed a total of $2,847.01 for the GD&C personnel.  Defs. Mem. of Law (Docket No. 126) at 21.  This amount should therefore be reduced by one-half, or $1,423.51.

Other claims by GD&C for lodging, meals and travel must also be reduced.  See Defs. Mem. of Law (Docket No. 126) at 21-22.  A claim for $150 for "meals" for Bini on February 17, 2004 (Ex. V at 27) is excessive and should be reduced by $100 to $50.  A charge for lunch on August 7, 2003 included at least two individuals from GD&C for whom claims have

been deemed excessive and unnecessary.  Ex. V at 27.  That claim should be reduced by

$45.  A charge of $136 for travel on April 21, 2004 for Alison Gooding (Ex. V at 37) should

be disallowed for the same reason.  The other challenges by the County are without

foundation and should be rejected.[19]

As the claim of LCCRUL, it claims a total of $3,985.85 for "Transportation" and

$2,091.56 for "Meals/lodging," both from "June 2003 to Oct. 2003."  Fineman Decl. (Docket

No. 119), Ex. B at 7.  No further details are provided.  The absence of any detail as to dates,

itemized amounts, or other such information makes it impossible to assess the

reasonableness of these claims.  Accordingly, these amounts appear excessive on their face

and should be reduced by one-half each to $1,992.93 and $1,045.78 respectively.

Accordingly, plaintiffs' claim for costs for proceedings in the district court should be

reduced for these reasons by a total of $4,743.22.

## 2. Online Research

The County also contends that claims for costs incurred for online research are

excessive.  Defs. Mem. of Law (Docket No. 126) at 21.  In <u>Arbor Hill II</u>, the Second Circuit

held that "online research may properly be included in a fee award" and "[i]f GD & C normally

bills its paying clients for the cost of online research services, that expense should be

included in the fee award."  369 F.3d at 98.  GD&C normally bills its clients for online

services.  <u>See</u> Karlan Supplemental Decl. (Docket No. 130) at ¶ 11.  Accordingly, plaintiffs

---

[19]For example, the County contends that costs should not be awarded for lodging
expenses incurred by one of plaintiffs' expert witnesses for the hearing September 8-10,
2003, and that travel costs incurred by Karlan on June 29, 2004 were unrelated to any
proceedings in this case.  Defs. Mem. of Law (Docket No. 126) at 21-22 & n.2.  However,
in time periods, events, and amounts, these costs were reasonable on their face and
should be awarded.

are entitled to an award for such costs.

However, the reasonableness of the amounts claimed here is also challenged by the County. Plaintiffs seek a total of $2,929.19 for online services in the district court proceedings (Ex. V at 28) and $8,276.90 on appeal. Karlan Decl. (Docket No. 100), Ex. N at 24-27 [hereinafter Ex. N]. As the County contends, evaluation of the reasonableness of the amounts claimed is made nearly impossible by the absence of any indication of the rate charged for the online services, which makes it impossible to determine the number of hours GD&C claims it devoted to online research. Moreover, the records indicate that substantial charges for online services were incurred either by attorneys for whom it is recommended herein that their time not be awarded, see, e.g., Ex. N at 26 (charge of $2,991.86 incurred by Ducao on December 13, 2003)), or for attorneys or legal personnel whose time was not otherwise claimed in these motions, see Ex. V at 28 (at least five charges for online services by a "Steven Raber").

Given these defects in the billing records, the charges claimed for online services for the district court proceedings should be reduced by one-third, or $976.40. Given these facts and the additional fact that the appeal concerned a single issue which reasonably should have required much reduced online research time, the charges claimed for online service for the appeal should be reduced by two-thirds, or $5,517.93.

### 3. In-House Duplication

The County next challenges the in-house duplication costs claimed by plaintiffs on the ground that plaintiffs have failed to provide the number of photocopies made or charge per page at which the costs were calculated. Defs. Mem. of Law (Docket No. 126) at 21. Plaintiffs claim a total of $1,687.78 for in-house duplication in the district court proceedings

(Ex. N at 19-23 ($1,289.60 for GD&C); DerOhannesian Decl. (Docket No. 119) at ¶ 32 ($398.18 for D&D)) and a total of $4,913.43 for the appeal (Ex. V at 22-26 ($4,883.25 for GD&C); DerOhannesian Decl. (Docket No. 104) at ¶ 17 ($29.18 for D&D)).  It reasonably appears from the GD&C billing records that it has charged photocopying at a rate of $.10 per page.  See, e.g., Ex. V at 23, 26 (single entries for $.10); Ex. N at 21 (same).  That rate is reasonable.  See Hogan, 144 F. Supp.2d at 144;  Rodriguez ex rel. Kelly v. McLoughlin, 84 F. Supp. 2d 417, 426 (S.D.N.Y.1999);  In re Towers Fin. Corp. Noteholders Litigation, No. 93CIV.0810 (WK)(AJP), 1997 WL 5904,  at *1 (S.D.N.Y. Jan. 8, 1997).  Moreover, the amount of photocopying also appears reasonable given the volume of documents necessary for the district court proceedings and the always increased volume necessary for any appeal. The limited amounts claimed by D&D also appear reasonable.  Accordingly, the costs claimed by plaintiffs should not be reduced on this ground.

### 4. Calculation of Costs

Subtracting $5,719.62 from the total costs of $25,129.92 claimed by plaintiffs for the district court proceedings, plaintiffs should be awarded a total of $19,410.03 in costs for those proceedings.  Subtracting $5,517.93 from the total costs of $13,369.47 claimed by plaintiffs for the appeal, plaintiffs should be awarded a total of $7,851.54 in costs for those proceedings.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that plaintiffs be awarded total attorneys' fees and costs on these motions of $160,763.07 as follows:

1. On plaintiffs' motion for attorneys' fees and costs incurred in the appeal (Docket No. 100), plaintiffs motion should be **GRANTED**, and plaintiffs should be awarded $20,287.50 for attorneys' fees and $7,851.54 for costs; and

2. On plaintiffs' motion for attorneys' fees and costs incurred in the district court proceedings (Docket No. 119), plaintiffs motion should be **GRANTED**, and plaintiffs should be awarded $113,214.00 for attorneys' fees and $19,410.03 for costs.

Pursuant to 28 U.S.C. § 636(b)(1), the parties and intervenors have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court in Syracuse, New York.  The failure to object to this report within ten days will preclude appellate review.  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Secretary of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED:  March 15, 2005
       Albany, New York

David R. Homer

United States Magistrate Judge